UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CABLEVISION LIGHTPATH, INC. et al,

    Plaintiffs,

 - against -              **ORDER**
                      11-CV-2457 (CBA)(JMA)
VERIZON NEW YORK INC. et al,

    Defendants.
----------------------------------------------------------X

A P P E A R A N C E S

Susan Joan Kohlmann
Jenner & Block LLP
919 Third Avenue
New York, NY 10022
 *Attorney for Plaintiffs*

Samuel L. Feder
Luke C. Platzer
Daniel I. Weiner
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
 *Attorneys for Plaintiffs*

Scott H. Angstreich
Melanie L. Bostwick
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street NW
Suite 400
Washington, DC 20036
 *Attorneys for Defendants*

Richard Henry Dolan
Schlam Stone & Dolan
26 Broadway
New York, NY 10004
 *Attorney for Defendants*

**AZRACK, United States Magistrate Judge:**

On May 20, 2011, Cablevision Lightpath, Inc., Cablevision Lightpath-CT, Inc., Cablevision Lightpath-NJ, Inc., Bresnan Broadband of Colorado, LLC, Bresnan Broadband of Montana, LLC, Bresnan Broadband of Utah, LLC, and Bresnan Broadband of Wyoming, LLC ("plaintiffs" or "Cablevision") filed this action against Verizon New York Inc., Verizon New Jersey Inc., and MCI Communications d/b/a Verizon Business, Inc. ("MCI" or "Verizon Business") (collectively, "defendants" or "Verizon"). Defendants moved to disqualify plaintiffs' counsel, Jenner & Block LLP ("Jenner"), on the grounds that Jenner previously represented MCI in similar circumstances. See generally Defs.' Mot. to Disqualify Counsel ("Mot. to Disqualify"), ECF No. 23. The Honorable Carol B. Amon referred the motion to me for decision. Order of June 15, 2011. I heard oral argument on the motion on August 9, 2011. CITE. For the reasons discussed below, defendants' motion is granted.

## I. BACKGROUND

### A. Plaintiffs' Claims

Telecommunications carriers, like Cablevision and Verizon, assess one another fees, including charges known as "access charges," when they access each other's networks. Pls.' Mem. in Opp'n ("Opp'n Mem.") 4, ECF No. 24. These carriers have local affiliates, like Verizon New York and Verizon New Jersey, that handle local traffic, and other entities, like Verizon Business, that handle long distance traffic. Opp'n Mem. 4–5. The type of rate charged by carriers depends on whether traffic is exchanged between local affiliates, in which case the rates are set by interconnection agreements, or long distance, in which case the rates are set by "filed tariffs or posted price lists depending on the particular state." Id. at 5.

Recently, Verizon ceased paying access charges to Cablevision for traffic that originates or terminates in Voice over Internet Protocol ("VoIP") format. Id. at 5. Verizon did so based on the belief that "tariffed access charges do not apply to VoIP traffic." Mot. to Disqualify 2. Cablevision brought this suit to compel Verizon Business to pay the rates set by the filed tariffs, and to compel Verizon New York and Verizon New Jersey to pay the rates set by the interconnection agreements. See Opp'n Mem. 5–6. In the alternative, Cablevision makes equitable claims contending that "Verizon used valuable services provided by Cablevision, and that Verizon's past history of paying Cablevision's invoices weighs in favor of valuing Cablevision's services at their tariffed prices." Opp'n Mem. 6 (citing Compl. ¶¶ 63–73).

**B.    Jenner's Former Representation of MCI/Verizon Business**

From the late 1960s until 2006, Jenner served as MCI's primary outside counsel and chief regulatory firm. Mot. to Disqualify 3; Mot. to Disqualify Ex. 1, Decl. of Curtis L. Groves ("Groves Decl.") ¶ 5, ECF No. 23–1. In 2006, MCI merged with Verizon, and after that merger, the entity formerly known as MCI became known as Verizon Business (to avoid confusion, this entity will be referred to as "MCI" pre-merger, and "Verizon Business" post-merger). Mot. to Disqualify 5; Opp'n Mem. 7–8. Defendants assert that, beginning in 2001, Jenner advised MCI with respect to the applicability of access charges to VoIP traffic at least four times. See infra Part II.B; Mot. to Disqualify 3.

Further, in 2005, Jenner defended MCI in an action brought by a local telephone company that sought, among other things, a ruling that MCI was required to pay tariffed access charges for traffic between VoIP carriers and traditional circuit switched providers. Mot. to Disqualify 4; Opp'n Mem. 7. Jenner successfully argued on behalf of MCI that access charges are inapplicable to VoIP traffic. Mot. to Disqualify 4 (citing Southwestern Bell Tel., L.P. v.

3

Missouri Pub. Serv. Comm'n, 461 F. Supp. 2d 1055, 1079 (E.D. Mo. 2006)). Later in 2005, MCI again retained Jenner to represent it in connection with MCI's merger with Verizon. Id. at 5. Verizon Business, as MCI is now known post-merger, contends that this representation put Jenner attorneys "in a position to obtain confidential information relating to all aspects of Verizon Business's operations and business plans."[1] Id.

## II. DISCUSSION

Because courts must "bear in mind a party's right to choose his or her counsel and the possibility that a disqualification motion has been brought for tactical reasons," Acme Am. Repairs, Inc. v. Katzenberg, No. 03-CV-4740, 2007 WL 952064, at *4 (E.D.N.Y. Mar. 29, 2007) (citing Hempstead Video, Inc. v. Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005)), "[m]otions to disqualify opposing counsel are viewed with disfavor in the Circuit," Bennett Silvershein Assoc. v. Furman, 776 F. Supp. 800, 802 (S.D.N.Y. 1991). Consequently, the moving party's burden of proof is a high one. See Evans v. Artek Sys. Corp., 715 F.2d 788, 791–92 (2d Cir. 1983). However, "any doubt should be resolved in favor of disqualification." Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) (citing Hull v. Celanese Corp., 513 F.3d 568, 571 (2d Cir. 1975)).

In order to prevail on a motion to disqualify, the movant must demonstrate:

(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Evans, 715 F.2d at 791. If the movant is able to establish a substantial relationship, a rebuttable presumption is created that the attorney had, or likely had, access to relevant privileged

---

[1] Verizon Business/MCI also references several current Jenner attorneys that formerly represented MCI in connection with access charges issues and the merger with Verizon. See Opp'n Mem. 4–5.

4

information. See Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 741 (2d Cir. 1978) (Mansfield, J., concurring); Revise Clothing, 687 F. Supp. 2d at 392–93.

**A.     Former Client**

The *Evans* test first requires that the movant be a former client of the opposing party's counsel. See Evans, 715 F.2d at 791. There is no dispute that Verizon Business, while it was known as MCI, is a former client of Jenner.

**B.     Substantial Relationship**

Next, *Evans* requires that there be a "substantial relationship" between the subject matter of the prior representation and the issues involved in the current action. See id. This element is satisfied only "upon a showing that the relationship between issues in the prior and present cases is 'patently clear[,]' [or, more specifically,] when the issues involved have been 'identical' or 'essentially the same.'" Cook Indus., 569 F.2d at 739–40 (internal citation omitted). The purpose of the substantial relationship prong is "to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage." Brown & Williamson Tobacco Corp. v. Pataki, 152 F. Supp. 2d 276, 282 (S.D.N.Y. 2001) (citing Emle Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 571 (2d Cir. 1973)). Here, a close examination reveals that the issues presented in the prior representation and the current dispute are substantially related.

During the course of the prior representation, MCI sought legal advice from Jenner on multiple occasions concerning the applicability of federal access charges to VoIP traffic and the relevant regulatory framework. Specifically, defendants claim that they received advice from Jenner: (1) in 2001, regarding the applicable regulatory framework for internet protocol telephony; (2) in 2003, regarding whether MCI "would be required to pay tariffed access charges

for communications using [MCI's] nascent VoIP services"; (3) in 2004, regarding whether its "VoIP services were exempt from access charges"; (4) in late 2004 and early 2005, regarding whether MCI "would be required to pay tariffed access charges for both its VoIP and enhanced prepaid calling services"; and (5) in 2005, regarding whether "access charges would apply to [MCI's] retail and wholesale VoIP services that were then on offer or in development." Groves Decl. ¶¶ 6–12. Further, Jenner litigated the same issue now in dispute in federal court in the Eastern District of Missouri. There, Jenner successfully argued on MCI's behalf that access charges are inapplicable to VoIP traffic because they are an exempt "information service." See Southwestern Bell, 461 F. Supp. 2d at 1079 (holding that "federal access charges are inapplicable to IP-PSTN traffic because such traffic is an 'information service' or an 'enhanced service' to which access charges do not apply").[2]

The current dispute bears a striking similarity to the prior representation. Plaintiffs brought suit after defendants ceased making access charge payments to plaintiffs on the grounds that access charges do not apply to traffic originating or terminating in VoIP format because such traffic is an exempt "information service." See Opp'n Mem. 5; Compl. ¶¶ 1–2, 35.

The parallel between the issues involved in prior representation and the current suit is unmistakable, and, in fact, a closer resemblance is hard to envision. In both the prior representation and the current suit, the core issue is whether access charges are applicable to VoIP traffic. During the prior representation, MCI sought Jenner's advice multiple times on this very issue during the period when MCI was designing its VoIP products, and Jenner concluded that the access charges *were not* applicable. Later, Jenner even successfully argued on MCI's behalf in federal court that access charges do not apply to VoIP traffic because they are an

---

[2] Verizon Business noted at oral argument that Jenner terminated its representation of MCI after submitting the brief in Southwestern Bell, but before decision. Tr. of Proceedings held on August 9, 2011 ("Tr.") 3:25–4:2.

6

exempt information service. Now, Jenner is counseling Cablevision on the same issue, but arrives at the opposition conclusion: that access charges *are* applicable to VoIP traffic. The subject matter of the prior representation and the issues in the present suit are "essentially the same," and, thus, substantially related.³ Cook Indus., 569 F.2d at 739–40 (citation omitted).

**C.     Likelihood of Access to Relevant Privileged Information**

The final element of Evans requires that, during the former representation, the attorney sought to be disqualified had, or likely had, access to relevant privileged information. See Evans, 715 F.2d at 791. "This prong does not require a showing that specific privileged information actually was imparted, but only that sharing of relevant privileged information was likely." Acme Am. Repairs, 2007 WL 952064, at *6 (citations omitted). Where "it can reasonably be said that in the course of the former representation the attorney *might* have acquired information related to the subject matter of his subsequent representation, it is the court's duty to order the attorney disqualified." Emle Indus., 478 F.2d at 571 (internal quotation marks and citation omitted; emphasis in original). Because I have already found a substantial relationship between the subject matter of the prior representation and the issues raised in the current dispute, defendants are entitled to a rebuttable presumption that this element has been met. See Cook Indus., 569 F.2d at 741.

In an attempt to rebut this presumption, plaintiffs argue that the dispositive issue in the present case is purely a legal one, see Twin Laboratories, Inc. v. Weider Health & Fitness, No. 89-CV-949, 1989 WL 49368, at *4 (S.D.N.Y May 4, 1989), and that any facts that might be

---

³ In their opposition, plaintiffs argue that the issues are not substantially related because the current dispute is simply a collection action based on interconnection agreements, and that, since Jenner did not advise MCI as to those agreements, there is no substantial relation to this case. See Opp'n Mem. 13–14. As defendants rightfully point out, the charges plaintiffs currently seek from Verizon Business are not set by interconnection agreement, but rather by tariff, see Defs.' Reply in Supp. of Mot. to Disqualify Counsel 3–6, and the prior representation explicitly involved the potential applicability of tariffs to VoIP traffic. See Tr. 10:18–22 (plaintiffs stated "[t]he case that we have in front of us today and the claim that exists with respect to Verizon Business arises under a tariff . . . .").

7

necessary are publicly available,[4] see Acme Am. Repairs, 2007 WL 952064, at *7. In other words, plaintiffs contend that Jenner could not have had access to facts during its prior representation that are relevant to this action because, since the current dispute is a purely legal one, there are no relevant facts. Further, plaintiffs argue, to the extent that facts are necessary, they are publicly available. Plaintiffs also stated at oral argument that the only discovery they would seek relates to the current state and structure of defendants' VoIP offerings, and nothing relating back to the period when Jenner represented MCI. See Tr. 13:14–15, 18:16–19. These arguments are unavailing.

The fact remains that there are likely relevant privileged facts to which Jenner was exposed. Because MCI sought Jenner's advice during the formative stages of its VoIP services regarding the potential applicability of access charges, Jenner likely would have had access to confidential information pertaining to the choices MCI made in how the VoIP services were designed and structured. Additionally, Jenner likely would have been privy to information, privileged and otherwise, concerning MCI's VoIP-related designs and strategies while representing MCI in a case that involved the very issue at play in this litigation—whether tariffed access charges apply to VoIP traffic.[5] Further, although plaintiffs claim today that they will only seek discovery relating to defendants' VoIP services as they presently exist, the course of a

---

[4] It is not entirely clear whether plaintiffs make the argument that the dispute is purely a legal one, see Opp'n Mem. 15–20, in connection with the first element of the Evans test, or the third element. However, arguing that the dispute is purely legal is tantamount to arguing that there is no privileged information, which falls more appropriately under the third element, i.e., the likelihood that counsel had access to relevant privileged information. See Evans, 715 F.2d at 791. Further, plaintiffs write that "[b]ecause the only conceivably relevant facts . . . are generic, noncontroversial, and publicly available, there can be no argument that Jenner was ever in a position to any privileged, confidential facts about those services that could be relevant or material to this case." Opp'n Mem. 17. Thus, the fact that plaintiffs themselves frame their argument in terms of the third element, properly locates this argument there.

[5] Marc Goldman, an attorney currently with Jenner who also previously counseled MCI, notes that, because Southwestern Bell was an appeal, the facts were confined to the record. See Decl. of Marc Goldman in Opp'n ¶ 9, ECF No. 25. Thus, to his knowledge, no confidential information was received by Jenner. Id. Regardless, this does not convince me that Jenner did not likely have access to a broader universe of information, confidential and otherwise, in prosecuting that case.

8

nascent litigation is not so easy to plot at the outset. It is no great leap to imagine a scenario in which discovery relating back to the formation of the VoIP products, including why and how the services were designed the way they were, or privileged information Jenner likely may have gleaned during its defense of MCI in Southwestern Bell, would be relevant to the current structure of defendants' VoIP services, and thus to this case. In such a scenario, Jenner would likely be in a position to use information learned during its prior representation to the disadvantage of Verizon Business. See Brown & Williamson Tobacco, 152 F. Supp. 2d at 282.

Bearing in mind the instruction that Evans "does not require a showing that specific privileged information actually was imparted, but *only that sharing of relevant privileged information was likely*." Acme Am. Repairs, 2007 WL 952064, at *6 (emphasis added), as well as the presumption in favor of defendants, I find that it is likely that Jenner was exposed to relevant privileged information.[6]

**D.     Motion to Disqualify is Granted**

In closing, I note that this is not a case where the prior representation was limited to a "narrowly-defined, single-issue lawsuit." See Mitchell v. Metro. Life Ins. Co., No. 01-CV-2112, 2002 WL 441194, at *5–6 (S.D.N.Y. Mar. 21, 2002). Rather, Jenner's representation of MCI was "prolonged and extensive," spanning approximately forty years during which Jenner served as primary outside counsel. Id. Moreover, this prolonged representation also encompassed the very specific issue at the forefront of the current litigation on multiple occasions.

---

[6] I also note that plaintiffs make several equitable claims which further support the finding that Jenner likely had access to relevant privileged information. These claims are founded on "Verizon's seventeen-year course of dealing in accepting and paying those rates to access [plaintiffs'] network . . . .," and the allegation that Verizon accepted the services "knowing that Plaintiffs expected to receive compensation at those tariffed and contractual rates." Id. ¶ 66. These claims further bolster the likelihood that Jenner had access to relevant privileged information because they expand the universe of relevant information to include facts about MCI's knowledge of plaintiffs' expectations regarding the payment of access charges. As MCI's primary outside counsel, Jenner likely had access to this information. While this access might not be enough for disqualification on its own, it is additional support for disqualification.

While a movant's burden on a motion to disqualify is a high one, here, defendants have satisfactorily demonstrated that they are a former client of Jenner, that the subject matter of the former representation is substantially related to the present dispute, and that Jenner likely had access to relevant privileged information. The Second Circuit has cautioned that the "dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." Emle Industries, 478 F.2d at 571; DeFazio v. Wallis, 459 F. Supp. 2d 159, 165–66 (E.D.N.Y. 2006). Accordingly, "any doubt should be resolved in favor of disqualification." Hull, 513 F.2d at 571. Here, my doubts as to the propriety of permitting Jenner to represent Cablevision in this matter abound, and, as such, defendant's motion to disqualify is granted.[7]

### III. CONCLUSION

For the foregoing reasons, defendants' motion to disqualify Jenner & Block, LLP as counsel for plaintiffs is granted.

SO ORDERED.

Dated: August 30, 2011
Brooklyn, New York

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE

---

[7] As this motion was first brought to the Court's attention a mere three weeks after the complaint was filed, any prejudice suffered by plaintiffs should be minimal. In making a case for prejudice, plaintiffs state that Jenner is their "lead counsel on issues pertaining Cablevision's voice services . . . . [and that t]his includes not only this litigation, but ongoing regulatory proceedings at the FCC and disputes with other carriers." Opp'n Mem. 24. I foresee no reason why my finding here today should effect Jenner's voice services-related representation of Cablevision in any other matter. The disqualification is based not on the fact that Jenner is representing Cablevision with respect to voice services, but rather that Jenner is doing so against a former client.